IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>PATRICK O. HOWARD,<br>HOWARD CAPITAL HOLDINGS,<br>LLC, AND OPTIMAL ECONOMICS<br>CAPITAL PARTNERS, LLC,<br><br>    Defendants. | §§§§§§§§§§§§§§§§§ | Civil Action No. 3:17-CV-420-L |

## MEMORANDUM OPINION AND ORDER

Before the court are the Receiver's Motion to Show Cause (Doc. 56), filed April 19, 2017; Defendant Patrick O. Howard's Motion to Strike Receiver's Omnibus Response (Doc. 85), filed June 9, 2017; Defendant Patrick O. Howard's Motion for Expedited Discovery (Doc. 90), filed June 16, 2017; and Defendant Patrick O. Howard's Motion to Seal (Doc. 91), filed June 20, 2017. Having carefully considered the motions, responses, replies, legal briefs, appendixes, evidence, record, and applicable law, the court **grants in part** and **denies in part** the Receiver's Motion to Show Cause (Doc. 56); **denies** Defendant Patrick O. Howard's Motion to Strike Receiver's Omnibus Response (Doc. 85); **denies as moot** Defendant Patrick O. Howard's Motion for Expedited Discovery (Doc. 90); and **denies** Defendant Patrick O. Howard's Motion to Seal (Doc. 91).
**Memorandum Opinion and Order – Page 1**

I.  **Background**

On February 14, 2017, the Securities and Exchange Commission ("SEC") filed a complaint against Patrick O. Howard ("Howard"), Howard Capital Holdings, LLC ("HCH"), and Optimal Economics Capital Partners, LLC ("OE Capital") (collectively, "Defendants"), alleging they operated an unlawful Ponzi scheme and defrauded at least 119 investors of approximately $13.1 million in a succession of fraudulent securities offerings.[1] The SEC alleged that Defendants violated sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] (violations of sections 5(a), 5(c), 10(b) and 17(a) of the Securities Act). In addition, the SEC filed an *ex parte* motion seeking an order appointing a receiver, a temporary restraining order, an asset freeze, and other emergency and ancillary relief. *See* Pl.'s Mot. for Prelim. Inj., *Ex Parte* TRO, Asset Freeze, Appointment of a Receiver and Other Emergency and Ancillary Relief (Doc. 5).

On February 14, 2017, the court entered an Ex Parte Order Granting Temporary Restraining Order, Asset Freeze, and Other Emergency and Ancillary Relief ("TRO") (Doc. 12), as well as an Order Appointing Receiver (Doc. 10), in which the court found:

> [T]he appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets owned, controlled, or possessed by the Defendants . . . Howard, [HCH], and [OE Capital] (collectively, "Receivership Defendants"), directly or indirectly, including accounts and assets in

---

[1] The Fifth Circuit Court of Appeals defines a Ponzi scheme as "a 'fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments.'" *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011) (quoting Black's Law Dictionary 1198 (8th Ed. 2004) and also citing *United States. v. Setser*, 568 F.3d 482, 486 (5th Cir. 2009) ("[I]n a classic Ponzi scheme, as new investments [come] in . . ., some of the new money [is] used to pay earlier investors.")).

**Memorandum Opinion and Order – Page 2**

the name of (1) Insured Liquidity Partners CFG I, LLC, (2) Insured Liquidity Partners CFG II, LLC, and (3) OE Capital Ventures, LLC (collectively, the "Funds" ("Receivership Assets").

Order Appointing Receiver 1. The court appointed W. Craig Stokley, Esq., to serve without bond as receiver for the estates of the Receivership Defendants and the Receivership Assets. In addition, the court froze all receivership assets and restrained and enjoined any person or entity with direct or indirect control over any Receivership Assets from "directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets." *Id.* ¶ 3. The court also dismissed all "trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants" and further stated that such persons and entities were to have no power or authority with respect to the Receivership Defendants' operations or assets. *Id.* ¶ 5.

Section VII of the Order Appointing Receiver, titled "Injunction against Interference with Receiver" provided:

> 29. The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachments, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;
>
> B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties, such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

  C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or

  D. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

  30. The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

Order Appointing Receiver ¶¶ 29, 30.

Defendants did not contest liability. On March 7, 2017, a judgment and permanent injunction were entered against each Defendant on the SEC's claims. *See* Doc. 35 (Final Judgment – Howard); Doc. 36 (Final Judgment – OE Capital); Doc. 37 (Final Judgment – HCH).

On April 19, 2017, the Receiver filed a Motion to Show Cause (Doc. 56), along with a supporting brief and appendix, requesting that the court order Howard, as well as former Director of Business for the Receivership Entities, Dovile Soblinskas ("Soblinskas"), and former employees of the Receivership Entities, Ron Scherer ("Scherer") and Christine Horne ("Horne"), to show cause as to why they should not be held in contempt for violating the Order Appointing Receiver. In support, the Receiver contends Soblinskas, Howard, Scherer, and Horne, directly or indirectly, took actions and caused actions to be taken, not only without the express written agreement of the Receiver but in some instances against the express direction of the Receiver, which hindered, obstructed, and otherwise interfered with the Receiver in violation of the Injunction against Interference with Receiver contained in the Order Appointing Receiver. The

**Memorandum Opinion and Order – Page 4**

Receiver requests that, once the court determines that Respondents have failed to show cause why they should not be held in contempt, it should:

>1. Enter an Order holding Soblinskas, Howard, Scherer, and Horne jointly and severally liable for all expenses incurred by the Receivership in addressing the aforementioned conduct and, accordingly, order Soblinskas, Howard, Scherer, and Horne to jointly and severally pay directly to the Receivership the amount equal to the amount of expense the Receivership has incurred addressing the conduct described herein.
>
>2. Order Soblinskas, after notice and hearing, to be placed in custody of the United States Marshal Service until such time as, in the determination of the Court, she has purged her contempt, or alternatively, instruct Soblinskas that should she violate the orders in the future, she will be placed in custody until she has purged her contempt.
>
>3. Order Howard, after notice and hearing, to be placed in custody of the United States Marshal Service until such time as, in the determination of the Court, he has purged his contempt, or alternatively, instruct Howard that should he violate the orders in the future, he will be placed in custody until he has purged his contempt.
>
>4. In addition or the alternative, order Soblinskas, Howard, Scherer, and Horne to forfeit any investment they may have in the Receivership Entities in favor of their victims.
>
>5. Modify the Order to restrain and enjoin Soblinskas, Howard, Scherer, and Horne from communicating in any manner written, oral or otherwise, with any investor or third party, directly or indirectly, about the Receivership Entities and/or the Receivership.
>
>6. Order that any lawyer, law firm, or other person, who received money from investors in connection with Respondents fraudulent scheme to raise money, shall return said funds within 7 days of entry of the order.

Receiver's Mot. to Show Cause 3 (Doc. 56).

On April 28, 2017, the court issued a Show Cause Order directing Howard, as well as nonparties Soblinskas, Scherer, and Horne, to file a written brief showing cause why he or she should not be held in civil contempt of the Order Appointing Receiver. *See* Show Cause Order

**Memorandum Opinion and Order – Page 5**

(Doc. 59). The court also ordered the Receiver to arrange for a process server to personally serve the order on the nonparties.[2] Howard filed a response to the Show Cause Order (*see* Doc. 69), as did Horne (*see* Doc. 68), who subsequently filed a Supplemental Response in Opposition to Motion to Show Cause (*see* Doc. 87), while Soblinskas and the Receiver entered into an agreement resolving the matter.[3] To date, Scherer has not filed a response. The docket sheet reflects he was personally served with the Show Cause Order on May 2, 2017. *See* Affidavit of Service (Doc. 67).

On June 2, 2017, the Receiver filed his "Omnibus Response" to Howard's and Horne's Responses to the Court's Show Cause Order. Howard subsequently filed a Motion to Strike Receiver's Omnibus Response (Doc. 85) and Motion to Seal (Doc. 91), arguing that evidence submitted by the Receiver in support of his Omnibus Response was privileged and confidential. Howard also filed a Motion for Expedited Discovery (Doc. 90), arguing that were the court to consider holding him in contempt, he should be afforded expedited discovery to provide a "full and robust" response to the serious contempt accusations raised by the Receiver. *See* Mot. for Discovery 2 (Doc. 90). All three of Howard's motions have been fully briefed by the parties.

---

[2] In its Show Cause Order, the court noted that the Receiver's motion sought two forms of contempt, civil and criminal, notwithstanding that the Receiver characterized his request as for civil contempt only. The court stated it would consider the civil contempt issues through written submission and, only after consideration of the civil contempt issues, would determine whether it was necessary to consider the request for criminal contempt, and if so, set an evidentiary hearing upon appropriate notice.

[3] On June 9, 2017, the Receiver and Soblinskas filed a motion setting forth their agreement to resolve the dispute, which included Soblinskas's agreement to cooperate with the Receiver by providing any requested documents in her possession that have been, or may be, requested by the Receiver, access and ownership over the oecapitalpartnersinvestors.@gmail.com e-mail account, and by paying a civil penalty in the amount of $5,000 and agreeing to be enjoined from communicating with any investor of the Receivership Entities or third parties about the Receivership Entities. On June 9, 2017, the court granted the motion which resolved the Receiver's Motion to Show Cause as to Soblinskas. *See* Order (Doc. 84).

## II. The Parties' Arguments

### A. The Receiver's Arguments and Evidence in Support of His Motion to Show Cause

The Receiver contends that Soblinskas, Howard, Scherer, and Horne, directly or indirectly, took actions and caused actions to be taken, not only without the express written agreement of the Receiver but in some instances against the express direction of the Receiver, which hindered, obstructed, and otherwise interfered with the Receiver in violation of the Injunction against Interference with Receiver contained in the Order Appointing Receiver.

In support, the Receiver asserts and provides evidence that on April 10, 2017, he learned that an e-mail was sent on April 8, 2017 from an anonymous address, oecapitalpatnersinvestors@gmail.com, to all of the legitimate investors. *See* Docs. 57-58 (evidence attached to Brief and Appendix in Support of Motion to Show Cause) ("Receiver's App."); Docs. 81-82 (Omnibus Response and Appendix in Support) ("Omnibus App."). He contends that the April 8, 2017 e-mail contained false, inaccurate, and misleading information in an effort to band these legitimate investors together in support of its stated goal: "[r]emoval of the receivership [to] allow our investment team to at least finish out our contracts." Receiver's App. 6. The April 8 e-mail purports to come from fellow similarly-situated legitimate investors but was actually written by Soblinskas, with the help of Howard and Horne. According to the Receiver, it became clear to him that the perpetrators of the securities fraud previously permanently enjoined by the SEC were seeking to further defraud their victims to advance their own interests, after which he filed his Motion to Show Cause.

In his Omnibus Response, the Receiver states that "[a]s early as February 26, 2017 – just twelve (12) days after this Court appointed Mr. Stokley as Receiver – Patrick Howard and his counsel had set into motion an unacceptable scheme to interfere with and harass the Receiver[.]" Omnibus Resp. 1 (Doc. 81). As evidence of this scheme, the Receiver provides the court with an e-mail dated February 26, 2017, from Brandon McCarthy, Esq. of Bracewell LLP to Howard, and including James Bell, Esq. as a "cc," in which Mr. McCarthy states:

> I saw Phil's e-mail to you. I agree. If they do ask for counsel, I would direct them to James Bell. Cc'd above. He is the one I recommended would be best to help protect the investor interest and hopefully lose/jettison the receiver in the future (after we get all the SEC stuff settled). He is very very good in this area and can create havoc for the receiver if need be. Just wanted to get that lined up for when the time comes. And winter is coming for Mr. Stokley.

Omnibus App. 2 ("McCarthy e-mail"). The Receiver contends that:

> Counsel's email to his client (which was subsequently forwarded without reservation to Respondent Dovile Soblinskas) and Patrick Howard's subsequent conduct in accordance with his counsel's shocking admonition cannot be understated. It is clear that Howard's and his counsel's intention all along was to interfere with this Court's Order Appointing Mr. Stokley as Receiver and to harass this Court's Receiver. To make matters worse, none of the Respondents, including Patrick Howard, Christine Horne, and Ron Scherer, have satisfied their burden to "file a written brief showing cause why they are not in contempt of this Court's order as alleged, and documented, by the Receiver in docket entry numbers 56-58" as ordered by this Court. Order (Dkt. No. 59) at 2. Thus, not only is the contemptuous conduct of Respondents confirmed by recently-acquired facts and evidence, but none of the Respondents can refute such facts and evidence or provide this Court with a reason, or cause, why they should not be held in contempt. Accordingly, for the reasons set forth in this Response, and in Receiver's Motion, the Court should enter an order (i) finding that Respondents have failed to show cause and that they are now in contempt of this Court's Order Appointing Receiver (Dkt. No. 10), (ii) ordering them each to pay a civil penalty of $5,000, (iii) ordering Howard, Horne, and Scherer to forfeit any investment they may have in the Receivership Entities, (iv) modifying the Order Appointing Receiver to restrain and enjoin Respondents each from communicating in any manner (written, oral, or otherwise) with any investor or third party, directly or indirectly, about the Receivership Entities and/or the Receivership, (v) and, either (a) ordering Howard to appear at a hearing to show cause why he should not be held in criminal

contempt, or (b) instructing Howard that should he violate this Court's orders in the future, he will be held in criminal contempt and placed into custody.

Receiver's Omnibus Resp. 1-3.

The Receiver also provides the court with the Affidavit of Soblinskas ("Soblinskas Aff."), in which she testifies, among other things, that:

> • Howard's counsel, Barrett Howell, suggested to me that I could, and there was nothing prohibiting me from, attempting to band together investors to challenge the SEC's receivership of OE Capital Partners (the "Receivership"). Howard's counsel Barrett Howell told me that if I could get a majority of the investors to jointly challenge the Receivership, it could be successful in removing the Receivership.
>
> • After receiving this information from Howard's counsel Barrett Howell, I then endeavored to identify an initial core group of investors who would participate with me in our effort to remove the Receivership.
>
> • Howard helped me identify some people who could be included in the initial core group of investors. Howard attended meetings and telephone conference calls with myself and investors where the investors involvement in the effort to retain counsel to remove the Receivership was discussed.

Omnibus App. 5-8 (Soblinskas Aff. ¶¶ 2, 4-23).

In her Affidavit, Soblinskas also describes two in-person meetings in Dallas with investors, one in-person meeting in Austin with an investor, and a teleconference with an investor. She states that "the information communicated in the April 8, 2017, email is the same information that was discussed in the in-person meetings . . . and teleconference." *Id.* at 7 (Soblinskas Aff. ¶ 18).

Soblinskas also provides testimony that Horne was involved in drafting the contents of the April 8, 2017 e-mail to investors, and that she participated in several conference calls with investors as part of the ongoing effort to assemble a group of investors to seek legal counsel and potentially remove the Receiver. *Id.* at 6-7 (Soblinskas Aff. ¶¶ 12, 15, 20).

Finally, Soblinskas testifies that she and Horne met with the Receiver on March 21, 2017, and Horne expressed some concern about what the Receiver's communications to investors might say, as she was worried about her reputation with her clients. At the meeting, the Receiver informed Horne and Soblinskas that they were not authorized to send any communications that were not truthful to any investors. *Id.* at 4-5 (Soblinskas Aff. ¶ 1).

### B. Respondents' Arguments

While Howard concedes that the Order Appointing Receiver was in place and required certain conduct on his part, he contends that he did not violate any definite and specific provisions of the Order Appointing Receiver. Among other things, he argues that the "Motion [to Show Cause] cannot survive because the Order [Appointing Receiver] does not prohibit [him] from contacting investors." Howard Resp. 7 (Doc. 69). Howard asserts that the "Receiver concedes as much [since] the relief he seeks includes modification of the Order [Appointing Receiver] to prohibit Mr. Howard and others from contacting investors." *Id.* at 8. Howard further argues that instead of filing a motion to amend the Order Appointing Receiver to add such a limitation, or seeking clarification from the court, "the Receiver is prematurely seeking contempt where none is warranted." *Id.* Like Howard, Horne argues that she did not participate in any conduct proscribed by the specific provisions of the Order Appointing Receiver. *See* Horne Resp. (Doc. 68); Horne Supp. Resp. (Doc. 87); Horne Aff. (Doc. 87-1). Horne testifies that Soblinskas was responsible for the factual content of the April 8, 2017 e-mail, that as a non-principal in OE Capital, she was not privy to whether the facts stated in the e-mail were true or false, and that she only assisted with correcting the grammar and spelling in the e-mail. App. to Horne Supp. Resp. (Horne Aff. 5).

**Memorandum Opinion and Order – Page 10**

### III. Legal Standard for Civil Contempt

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) (quoting *Hornbeck v. Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013)). "To hold a party in civil contempt, the court must find such a violation by clear and convincing evidence." *Id.* Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable a fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Hornbeck*, 713 F.3d at 792 (citation omitted). "The contemptuous actions need not be willful so long as the contemnor failed to comply with the court's order." *Waste Mgmt.*, 776 F.3d at 341 (quoting *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)). "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002) (citation omitted).[4]

---

[4] As previously stated, *see supra* note 2, while the Receiver's Motion to Show Cause was in the nature of a request for civil and criminal contempt, at this juncture, the court is considering only the civil contempt issues through written submission and, only after consideration of the civil contempt issues, will the court determine whether it will even need to consider the request for criminal contempt, and if so, set an evidentiary hearing upon appropriate notice.

**Memorandum Opinion and Order – Page 11**

IV. **Analysis**

   A. **Whether a Court Order Was in Effect that Required Certain Conduct by Respondents**

It is undisputed that a court order was in effect at the time the alleged violations occurred. Specifically, on February 14, 2017, the court entered the Order Appointing Receiver providing that "all persons receiving actual notice of this Order . . . are hereby restrained and enjoined from directly or indirectly taking or causing any action to be taken, without the express written agreement of the Receiver, which would . . . hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties" or "harass the Receiver." Order Appointing Receiver ¶ 29 (Doc. 10). It is undisputed that Howard, Horne, and Scherer received notice of the Order Appointing Receiver.

   B. **Whether Respondents Failed to Comply with the Court Order**

Having considered the specific language of the Order Appointing Receiver, parties' legal briefing, evidence submitted by the parties, and applicable law, the court finds that while the Receiver has met his burden of showing that a court order was in effect and that the order required certain conduct by Respondents, he has not shown by clear and convincing evidence that Respondents failed to comply with any specific provisions of the Order Appointing Receiver. The Receiver has not provided the court with evidence to meet his burden of showing that Respondents' conduct actually interfered with or hindered his ability to perform his duties as Receiver. As an example, the Receiver asserts that "the conduct by the Respondents has caused some of the investors to be lulled into thinking the Receiver, the SEC, and the Court are not trustworthy and there is money and value in the Receivership Estate that does not exists." Receiver's Br. in Supp.

**Memorandum Opinion and Order – Page 12**

of Mot. to Show Cause 24 (Doc. 57). The Receiver does not offer evidentiary support for this contention. The Receiver's speculation as to the impact, if any, of Respondents' communications with the investors is not the type of clear and convincing evidence required in the context of a contempt proceeding.

In reaching this conclusion, the court has considered not only the evidence submitted in the Receiver's Appendix in Support of Motion to Show Cause (Doc. 58) but also the evidence contained in the Appendix to the Receiver's Omnibus Response (Doc. 82), which includes the McCarthy e-mail and Soblinskas Affidavit.[5] The McCarthy e-mail and Soblinskas Affidavit do

---

[5] As previously noted, Howard has filed a Motion to Strike Receiver's Omnibus Response (Doc. 85) and Motion to Seal (Doc. 91), arguing that the McCarthy e-mail and related portions of the Soblinskas Affidavit (attached as Exhibits A and B, respectively, to the Appendix to the Receiver's Omnibus Response) are privileged and confidential. Specifically, Howard contends that "Exhibits A and B . . . contain Mr. Howard's confidential, attorney-client privileged joint defense communications that appear to have been improperly disclosed and shared with the Receiver by [Soblinskas] without Mr. Howard's waiver or consent." Mot. to Strike 1 (Doc. 85). The court **rejects** Howard's argument.

       First, McCarthy's e-mail copies a third party, Mr. Bell, thereby defeating any claim Howard may have had to the communication being privileged. *See United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) (noting that attorney-client privilege, which prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice, does not apply to communications made in the presence of third parties).

       Further, as the Receiver correctly notes, it is Howard's burden, as the party invoking the attorney-client privilege, to establish the existence of the attorney-client privilege and the confidential nature of the communication. Howard's legal filings fall woefully short of meeting this burden. Even had Howard established that the McCarthy e-mail was privileged initially, he waived the privilege when he disclosed the McCarthy e-mail to Soblinskas. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) ("When relayed to a third party that is not rendering legal services on a client's behalf, a communication is no longer confidential, and thus falls outside the privilege.").

       The court also **rejects** Howard's attempt to qualify for protection from waiver under the "common legal interest" doctrine, which he refers to as the "joint defense privilege." In the Fifth Circuit, "the two types of communications protected under the [common legal interest] doctrine are: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (internal citations omitted). In this case, Soblinskas testifies in her Affidavit that she did not agree to a joint defense agreement with Howard and his counsel and did not believe they shared a common legal interest. Soblinskas Aff. ¶ 16. Howard's conclusory statements to the contrary are insufficient. Moreover, as Soblinskas was not represented by counsel until April 20, 2017, it was not possible for her to enter into a joint defense agreement at the times alleged. *See generally* Restatement (Third) of the Law Governing Lawyers § 76

**Memorandum Opinion and Order – Page 13**

not alter the court's finding. Nothing contained in the McCarthy e-mail or Soblinskas Affidavit changes the fact that the Order Appointing Receiver does not contain any provision preventing Respondents from communicating, directly or indirectly, with investors or attorneys. That Howard, Horne, and other individuals affiliated with OE Capital convened to address their concerns (legitimate or not) that the Receiver may not have been acting in the best interest of investors and considered consulting an attorney to assess any legal options available to them, including potentially removing the Receiver, is not a violation of a specific provision in the Order Appointing Receiver. In addition, the evidence shows that the investors were initiating the contact with Respondents regarding their investments because the Receiver had not yet communicated with them more than a month after his appointment. Finally, to the extent the Receiver contends that the evidence shows that Howard and others were engaging in a new series of acts to defraud the same victims of the original Ponzi scheme by, directly or indirectly, providing them with false information about OE Capital's investment vehicles and seeking financial contributions from them, this would be an issue for the SEC to raise, as such conduct would appear to violate the Final

---

("If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under §§ 68–72 [of the Restatement] that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication."); *see also id.*, cmt. d ("A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement."). Howard does not provide the court with any case law extending the common legal interest doctrine to a communication shared with an unrepresented party.

Judgment and Permanent Injunction entered into by Howard, OE Capital, and HCH (*see* Docs. 35-37).

V.   **Conclusion**

For the reasons stated herein, the court **grants in part** and **denies in part** the Receiver's Motion to Show Cause (Doc. 56). The Receiver's Motion to Show Cause is **granted** with respect to his request that the court modify the Order Appointing Receiver (Doc. 10), to restrain and enjoin Respondents Howard, Scherer, and Horne from communicating in any manner (written, oral, or otherwise), with any investor or third party, directly or indirectly, about the Receivership Estate and/or the Receivership. The court **denies** the Receiver's Motion to Show Cause in all other respects, including insofar as it seeks criminal contempt. This ruling renders Defendant Howard's request for expedited discovery moot, and, accordingly, the court **denies as moot** Patrick O. Howard's Motion for Expedited Discovery (Doc. 90). Further, for the reasons previously stated, *see supra* note 5, the court **denies** Defendant Patrick O. Howard's Motion to Strike Receiver's Omnibus Response (Doc. 85); and **denies** Defendant Patrick O. Howard's Motion to Seal (Doc. 91). The court will modify the Order Appointing Receiver in the manner indicated above by separate order.

With respect to Respondent Scherer, the court will issue a show cause order directing Scherer to file a written brief showing cause why he is not in contempt for failing to respond to the court's April 28, 2017 Show Cause Order (Doc. 59).

**It is so ordered** on this 20th day of February, 2018.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge